Marshall K. LIGHTFOOT, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 49439.

Court of Criminal Appeals of Texas.

Feb. 26, 1975.

Rehearing Denied March 15, 1975.

Joe Tunnell, Hathaway & Jackson, Tyler, for appellant.

Curtis L. Owen, Dist. Atty., Howard W. Britain, Asst. Dist. Atty., Tyler, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant brings this appeal from a conviction for sale of a narcotic drug, to-wit: isonipecaine. The jury returned a guilty verdict and assessed punishment at ten (10) years and six (6) months' confinement in the Texas Department of Corrections.

The appellant's sole ground of error challenges the sufficiency of the evidence to support his conviction. Jimmy Burleyson, a narcotic agent for the Texas Department of Public Safety, provided the main testimony for the State. Agent Burleyson testified that while he was working undercover on March 14, 1972, he first came in contact with the appellant at approximately 11:30 a. m. in a motel located in Tyler. Agent Burleyson was accompanied to the motel by a confidential informant who introduced him to the appellant. After Agent Burleyson, the informant, and the appellant had talked for about fifteen minutes, the appellant pulled a bottle of assorted pills from under a pillow located on a bed and offered to sell it to Agent Burleyson for sixty dollars. The appellant then stated that he also had more of what was in that particular bottle plus a gallon of opium and some doctor's equipment, and would obtain such if Agent Burleyson so desired. Agent Burleyson asked the appellant to go get the items if he did not have them with him, and thereupon the appellant and informant departed the motel room to go to the appellant's mother's house to retrieve the items from the garage. Agent Burleyson stayed in the motel room, and approximately fifteen minutes after their departure the appellant and informant returned with a bottle three-quarters full of alleged opium. At this point the appellant stated he had "some more stashed" at Mount Sylvan and it would take him around thirty or forty minutes to get the items and return to the motel room. Agent Burleyson again requested that the appellant go get the items, and the appellant and informant departed the motel room. The two men returned to the room about forty minutes later with a green duffle bag which contained two or three bottles of liquid substances, numerous amounts of tablets and capsules, and "some doctor's equipment." After the appellant dumped the contents of the bag onto the bed, Agent Burleyson asked him how much he wanted for the items and the appellant replied one thousand dollars. After unsuccessfully seeking a reduction in price, Agent Burleyson went to his automobile to get the money and his pistol. While at his car, he contacted a Tyler policeman and deputy sheriff who were in a car on a side street behind the motel complex, and informed them that he was in the process of purchasing some drugs. Agent Burleyson then went back into the motel room and

handed the appellant ten one hundred dollar bills. Immediately after the appellant accepted the money, Agent Burleyson pulled his pistol, identified himself as a police officer, and advised the appellant that he was under arrest. Shortly thereafter, the Tyler policeman and deputy sheriff entered the motel room, took custody of the appellant, and escorted him to jail.

John Franka, a chemist employed by the Department of Public Safety, testified that he performed the standard tests used in drug identification to analyze the items seized from the appellant by Agent Burleyson. He further testified that tests on the contents of a brown bottle seized from the appellant revealed that the liquid contained isonipecaine, a narcotic drug.[1]

The appellant presented no evidence at the guilt-innocence stage of the trial.

It is urged by the appellant that since Agent Burleyson's testimony during cross-examination revealed that he never intended to let the appellant keep the one thousand dollars such fact prevents a "sale" from having taken place. The appellant contends that our decision in Green v. State, 502 S.W.2d 807 (Tex.Cr.App.1973), establishes that the intent of the parties is determinative of whether or not a transaction constitutes a "sale."

The appellant's reliance on *Green* is misplaced as it is not in point with the present case in respect to either the fact situation or the statutory violation involved.[2] The offense alleged in the indictment in the present case was unlawful sale of a narcotic drug, proscribed by Article 725b, Vernon's Ann.P.C. Under this statute, "sale" includes "barter, exchange, [or] gift, or offer therefor . . ."[3]

The evidence in this case clearly shows that the appellant procured an assortment of drugs, offered to sell them to Agent Burleyson, and accepted one thousand dollars from Agent Burleyson in payment therefor. Since the acts of the appellant in offering to sell the drugs and accepting payment from Agent Burleyson clearly amounted to an *exchange*, such constituted a "sale" under the statute. Posey v. State, 515 S.W.2d 286 (Tex.Cr.App.1974).

Therefore, we find the evidence sufficient for the jury to find beyond a reasonable doubt that the appellant was guilty of selling a narcotic drug.

The judgment is affirmed.

---

1. Article 725b, Sec. 1(14).

2. In *Green*, an undercover agent agreed to purchase from the appellant 4,000 tablets of lysergic acid diethylamide for the sum of $2,400. The agent merely showed the appellant a "roll" of money, which consisted of numerous one dollar bills surrounded by a one hundred dollar bill, and never actually gave such to him. This court reversed the judgment on the ground that since the agent had neither the *means* nor *intent* to complete the sale, no such sale occurred. Lysergic acid diethylamide is classified as a dangerous drug and therefore the appellant in *Green* was prosecuted for violating Article 726d, Vernon's Ann.P.C. Under that statute, "delivery" is defined as "sale, dispensing, giving away, or supplying in any other manner." "Sale," however, is not defined by the statute. Since the indictment in *Green* charged "sale," the State was required to prove an actual "sale," not merely "delivery," and failed to carry the burden of proof.

In the present case, the agent had the *means* to complete the sale and he actually gave the money to the appellant. The agent's intent to retrieve the money following arrest is irrelevant since the exchange constituted a "sale" under Article 725b, Vernon's Ann. P.C.

3. Article 725b, Sec. 1(10), Vernon's Ann.P.C.